We have the continuation of one case from last month, and that is Chang Cruz v. Atty. Gen. No. 14-4570. Judge Nygard, are you with us via audio? I am indeed. Is there a video too? Or just audio? Just audio. Okay. Mr. Hewitt and Ms. Trapoli? Am I semi-close? Absolutely close. My wife tells me if I screw up an Italian name, I'm in deep trouble. Thank you, Your Honor. May it please the Court, Martin Hewitt on behalf of Petitioner Carlos Chang Cruz. I'm joined by my colleague, David DeBold. With the Court's permission, I'd like to reserve five minutes for rebuttal. That's fine. I'd also like to thank the Court again for agreeing to reschedule the argument. I apologize for any inconvenience. Not a problem. Mr. Chang Cruz is not an aggravated felon, because the New Jersey law under which he was convicted prohibits more conduct than what is prohibited under the comparable federal statute. Is that your primary argument, or is your primary argument your response to Mathis? Your Honor, I think this remains our primary argument, because I think it is probably the most straightforward basis on which to hold that the B.I. erred in ruling that Mr. Chang Cruz had committed an aggravated felony. The sweeping more broadly can cover there being alternative means, as well as elements. So what specifically, when you say that you don't mean to rely on Mathis, but it sweeps more broadly, what particular aspect of it are you focused on? Sure. Yes, Your Honor. There are several reasons and ways that it sweeps more broadly. I think one in particular is indisputably clear. The New Jersey statute prohibits certain drug offenses within 1,000 feet of community centers that are, quote, used for school purposes like the community center at issue in the state versus white decision. The government does not dispute that a property like that does not constitute the, quote, unquote, real property comprising a school, which is the federal language. And even assuming that such a center qualifies as a, quote, youth center, as the government argues under the federal provision, the federal statute only prohibits drug offenses within 100 feet, not 1,000 feet, of a youth center. Well, let's put aside the youth center and focus on just the identification of the property in New Jersey as a school. That is where we have a property that is actually owned by a school board. It's used on a regular basis for two hours a day at a set time with over 100 students that are being bussed there by school bus and are doing school work, something that's clearly for a school purpose. And then we have the overlay of that, that there's an ordinance that actually identifies it. It's been designated as a school facility. Why wouldn't that be a school every bit as much a real property comprising a school for purposes of Section 860? Your Honor, I'm not aware of any authority that holds that the question whether property constitutes the real property comprising a school under the federal statute could turn on whether or not it happens that a township or a city has passed an ordinance designating the property a school facility, I think is the language from State v. White. The court in State v. White didn't, in its analysis, heavily rely on that fact. And I'm not aware of any authority holding that for purposes of the federal statute. That is meaningful. And, in fact, I think the authority is to the contrary. The Eleventh Circuit, for example, has held in a case involving a playground that the fact that the playground had a sign that said this is not a public playground was simply not dispositive or even particularly relevant as to whether that property qualified as a playground under the federal statute. Let's say that the ipsy-dixit of a township or a district isn't sufficient. But here seems to be just one further indication that when you have the circumstances that I was describing earlier, coming directly out of the opinion, that what you have is, on the face of it, by all circumstances, it appears to be a school, at least for these two hours on a regular basis, including schoolchildren being bused to that location to do their studies. Respectfully, Your Honor, I disagree. It was a community center. It was a community center that was used by students for a certain portion of the day, but it was unattached to a school. It was owned by the school board and leased out for various types of recreational purposes within the community that were not related to school activities. And I don't believe the government has argued at all or taken the position that putting aside this issue of the township designation, that a property like that or a public park or a basketball court or any of the other myriad ways, I think, that the New Jersey statute sweeps more broadly, could be turned into real property comprising a secondary school or a college or the long list in the federal statute simply because they're used for school purposes. I don't think there's a dispute that those are conceptually different things, and I think that result flows directly from the plain meaning of the statute. The federal statute uses the words real property comprising a school and comprising the dictionary definition is consisting exclusively of. And I think it's relatively clear that that portion of the federal statute is referring to schools themselves, even if there are other types of properties that the federal statute then goes on to list like youth centers. So would a school that allowed its facilities, its gymnasium or its auditorium to be regularly used by a community, would it thereby lose its character as comprising a school? I don't think so, Your Honor. I think if I'm understanding your question correctly, a gymnasium that is in a school is part of the school property. It is part of the real property comprising a school. And were a drug offense to take place within 1,000 feet of that property, I don't think there would be a dispute that it was covered by both of these statutes, the state and federal. But as we've tried to lay out in the brief, I think there are a lot of examples of types of properties and types of conduct that would fall outside the federal statute, including in particular, and if I may just go back to it because, again, I think it's probably the most clearest example, a community center to qualify under the federal statute has to qualify as a youth center. Let's assume that it does. Even if it does, the federal statute only prohibits drug distributions within 100 feet of a property like that. The state statute prohibits drug distributions and offenses within 1,000 feet. On its face, the New Jersey statute is broader than the federal statute. What if the youth center, the community center were leased to the school and the school uses it every school day and, in fact, non-school days? Would that be considered real property comprising a school, which is the generic analog? I don't think so, Your Honor. Because? I think, again, and, again, I don't think, I don't understand this to be in dispute from the government's brief. The federal statute uses the language real property comprising a school. And, you know, as we've argued in our brief, comprising has a plain meaning.  I don't think there's any question looking at that provision as a whole that when Congress wrote those words, what it had in mind was a school, the building, the property surrounding it. And then the federal statute goes on to identify other places that are covered that are not the real property comprising a school, like youth centers, like playgrounds, like public swimming pools. I think the statute runs as a whole. So you're saying that under White that would be school, might be school property used for school purposes, but under the federal generic analog there would not be real property comprising a school? Correct, Your Honor. Okay. Does at some point that become circular? You know, even what you're describing as real property comprising a school, that's something that's used exclusively in that manner for some part of the year, for certain hours of the day, and thereby it becomes real property comprising a school. We're looking at the question of whether a school property used for school purposes is a categorical match, where it's something like a recreational center, but it's owned by the school and it's used for certain hours of the day for school purposes. How functionally is that really different? I mean, you're saying, well, the first one is a school, and therefore it's real property comprising a school, but I'm not sure that really gives us a way to distinguish those two functional uses, as long as it's on property that's, in fact, owned by the school board in both cases. So I think a few thoughts, Your Honor. I think the first, the plain meaning of the words a school in the federal statute should result in the conclusion that places like community centers aren't covered, at least in that language. Second, the state statute does have a functional test component to that element, but the federal statute doesn't. It just refers to real property comprising a school. So there's no danger, and I see that my time is up. Okay, fine. You're on our time. So there's no danger, I don't think, that the fact that a school, an actual school, is being used for different purposes can transform it into not the real property comprising a school. I'm not sure if that answers your question. Why don't you finish up, and then we'll go on to the math part. And if it doesn't, I apologize. I will take another shot. That's okay. I thought maybe we could turn to the divisibility of school property and the school bus. Yes, Your Honor. Here we have section 35.7, which makes the distribution on or near a school property a strict liability offense by removing the defense of knowledge. But by implication, that same defense of knowledge is available on a school bus. Doesn't that suggest if the location is tied up with a different mens rea, that we need to look at those two things as different elements and not simply different means of committing the offense? A few thoughts, Your Honor. First, I think the New Jersey case that we cited in our brief answers this question and explicitly holds that school bus and school property are alternative means. And what NAFTA says is when you have a decision like that, you simply apply what it says, period. But to your question, I think you're referring to the government's argument that that affirmative defense, because it applies to a school bus and not school property, must mean that there are different elements. I'm not aware of any authority to that effect. These are actually affirmative defenses, right, that the prosecutor doesn't have the burden of proving. So they cannot be an element of the offense. I don't think that's actually the case for 35.7. It is for the next subsection in terms of affirmative defenses. For example, whether juveniles are present at the time. But for the knowledge element, I think it's identified simply as a defense, meaning that there's very little that needs to be shown on the part of the defendant for the burden to go back to the government. Understood, Your Honor. I think nonetheless it remains a defense that a defendant in a case charging a violation of this statute would have the burden of proving. And the circuit courts that have addressed this question, the extent to which an affirmative defense is relevant to whether a statutory alternative constitutes a means or an element, have held that the existence of affirmative defenses are irrelevant to that question under the categorical approach. In particular, the Eleventh Circuit's decision in a case called Donawa, that's at 735 F3D 1275. The Ninth Circuit's decision in a case called Gill v. Holder, 651 F3D 1000. How about a straight defense, not an affirmative defense? I apologize, Your Honor. I'm not sure I understand the difference. I think the key question for purposes of the categorical approach is whether or not, whether it's a regular defense or an affirmative defense, the defendant has the burden of proving it or the prosecution has the burden of proving it beyond a reasonable doubt. I take it your point is it's possible the government has the burden of proving the inapplicability of that defense in its case in chief. Am I understanding correctly? Well, if you assume New Jersey law for a defense, not an affirmative defense, only requires that these should be raised for the burden to shift back as opposed to affirmative defense where there's a burden of production, if not proof, on the part of the defendant. It's a low burden for a defendant to shift the actual burden of proof on an element like mens rea back to the government. That would seem to suggest if one is tied to a strict liability offense, one requires the government with only a minimal showing on the part of the defendant to prove knowledge that those are actually two different elements, two different types of offenses themselves. I will say I'm just not familiar with any New Jersey case that has construed that defense in that manner. I do think even putting that aside, there are other pieces of information that answer this question. First is the OVAR case that we cited. The second is the fact that regardless of whether you're charged with school bus or school property, you're subject to the same punishment. Let's talk about OVAR because I understand why given what the Supreme Court, the case law on which the Supreme Court relied in Mathis, you'd see analogies and certainly the reference to it being a means is very helpful for your position. But in the context of that case, what the court was dealing with was the dismissal of the indictment. And when the court goes on its reasoning in saying that the indictment was error for the trial court to dismiss the indictment and that this surplusage should have been handled by excision through amendment, doesn't that actually support the government's position? That is, if it doesn't matter, as was true in Mathis, which of these aspects the jury found, then it wouldn't have been necessary to excise the language from the indictment for proper charging of the jury. The fact that the court thought that it needed to be excised and that was the proper way to handle it, doesn't that actually suggest that it is viewed as an element, something that wasn't properly presented to the jury and shouldn't have been offered to them as alternatives for conviction? I think what the court was actually saying was that that language could be excised upon motion based on the argument that there just wasn't any evidence that a school bus was involved. But the rule the court was applying, as the cases and rule of criminal procedure it cites there make clear, I think, is the general rule, which is also noted in actually DeCamp, that you can't charge two different crimes in the same count of an indictment. Doing so renders that count of the indictment fatally deficient. What the O.R. court said was, yes, you can excise surplusage, but the existence of surplusage, which can include things like an alternative means for committing the offense, the presence of that in a single count does not render that count of the indictment fatally deficient. I see that my time is up, unless there are further questions. Could you just address briefly, say we don't agree with you on those first couple of points, and we reach the question of dispensing versus distribution. Can you speak to why those are not separate elements, why you see those as indivisible? Absolutely. I think, admittedly, the case law with respect to this question and the impact of Mathis and the case law under New Jersey law is less definitive and clear than I would submit the O.R. cases. But I think it's important that the government has essentially conceded in its supplemental letter brief that neither the case law speaks clearly or speaks plainly on this question, nor the record of conviction plus the jury instructions. Frankly, that's a case dispositive concession, because if that is true, the available information we have does not speak with the clarity that the categorical approach demands. Mathis couldn't have been more clear about this. And in a scenario like that, we must presume that they are means and not elements, and thus not divisible and subject to the modified categorical approach. I think that answers your question. Judge Nygaard, do you have any questions? Yes. In your second issue, you contend that the BIA erred in granting the government's motion to remand and to add the plea transcript. If we were to accept your argument that that is error, what do you do when you go back, then, to the BIA on petition for review from the IJ? What do you do, then, with our Sybilis case? Your Honor, as set forth in our brief, I don't think Sybilis applies. And even if it could apply here, it's superseded by the Supreme Court's decision in Moncrief. I think if we went on the motion to remand issue, which is frankly one of four independent reasons why I think the BIA's decision was erroneous, what happens is the plea transcript should not be considered because it's not properly in the record. The government did not meet its burden under the binding regulation, and the BIA erred in granting that motion. And that leaves the parties in the same place they were when the IJ reached her initial decision, now something like five years ago, ruling that Mr. Chang-Cruz was statutorily eligible for cancellation of removal under the categorical approach and was worthy of that relief as an exercise of discretion, the latter of which the government has certainly never contested or challenged in these proceedings. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor. Mr. Kola? May it please the Court, Brianna Stripley on behalf of the respondent, the Attorney General of the United States. Your Honors, Petitioner admitted to being convicted of two counts of selling drugs within a thousand feet of school property. Petitioner also conceded that he's removable. So the only issue before this Court today is whether or not Petitioner has met his burden of proof to demonstrate eligibility for cancellation of removal relief. On June 23rd, when the Supreme Court issued its intervening case on Mathis, it changed the dynamic of this case, and we admitted that in our letter brief. So I'd like to actually start with the Mathis issue, because I think that actually proceeds to a much easier resolve of this case. While the government is confident that the school bus or school property used for school purposes is an element, not a means, we do agree with the Petitioner's counsel that with regards to dispense or distribute when you're applying the Mathis case, it's just unclear given the record of documents in this case. Therefore, this case should be remanded to the Board to find out whether or not Petitioner is otherwise statutorily eligible for cancellation of removal relief, including whether or not he deserves it as a matter of discretion. Are you agreeing then that, at least as to the dispensing and distribution, that that is indivisible or not so clear that it makes for a categorical match? That is, you're prepared to concede that the state statute speaks more broadly and we should be remanding simply for the discretionary determination on cancellation of removal? So a couple points of clarification. First and foremost, we maintain all of our other positions that we previously raised, but given that Mathis was an intervening decision with regards to the dispense or distribute alternative items, the government is conceding that under Mathis it's unclear. And the decision made, you know, we walk through the Mathis test. The first step is, you know, you look to state law. While there's really not any state laws explicitly saying one way or the other whether these are alternative elements or alternative means, in Mathis it was explicitly clear there was a state case on it. We don't have that. So then we look to other state law. We look to the face of the statute. Again, there's nothing there one way or the other, whether it's an enhancement of penalties or, you know, something else to weigh in whether or not in our search for whether this is an element or means. We just don't have a clue on that. Doesn't OGAR somewhat go against you here? With regards to the scope? In other words, the question you asked was whether distributing, dispensing, or possessing with intent to distribute sets forth alternative elements or instead separate means of satisfying a single element. OGAR, although it talked about school property and school bus, talked about it as being alternative means of satisfying a single element. Doesn't the implication of OGAR apply here to indicate that this would be a means and not an element? With regards to dispense or distribute or with regards to the school property or school bus? Dispense or distribute. We would respectfully disagree. I don't think it leads one way or the other. There are plenty of New Jersey State cases where distribute is only used as opposed to dispense. What's the difference between dispensing and distributing? The difference is mainly the supplier. In dispense, you know, it's usually a medical professional that is the person that is basically giving the drug and a distributor is anyone else. Is it possible to dispense without distributing? Because they are defined differently, it is possible. You know, there are other cases where in the federal context, right, so 860 actually defines dispense or distribute identically as the New Jersey statute. Why? Because, again, the New Jersey statute was modeled after 860, which is somewhat important to note in this context when we're doing this kind of nitty-gritty analysis between the two. They were modeled after each other. The definitions align. And there are case laws addressing the 860 of dispense or distribute and noting that there is a circuit split between whether or not dispense or distribute is an element or not or means. So it's just unclear. If I'm your drug supplier and I give you drugs, am I dispensing them to you? It would depend on what your role was if you were a medical professional. No, I'm not a medical professional. I get them illegally and I'm giving them to you because you've asked me for them and you're willing to pay for them. Am I dispensing them to you? That would be distributing, Your Honor. Am I dispensing them to you? No, Your Honor. Because? Because if you do not fit into the definition of dispenser, then you cannot dispense. Okay, now let's assume in that example that I am a medical professional and I get these drugs from my office and I'm not supposed to be giving them to you, but I do to make some money on the side. Am I dispensing them to you? Honestly, it's unclear. I would probably have to go to New Jersey to see whether or not you meet the definition. You said if you were a medical professional, so assume I'm a medical professional. Am I dispensing them to you? Just my guess on this hypothetical would be that probably you would count for dispensing. Am I also distributing them to you? I have to be distributing them to you, right? In the term of the word, perhaps. I think it comes down to the fact that these are defined separately and what we don't know is we're really trying to figure out if it's an element or a mean. And what we do under the Mathis test is walk through this procedure and we just don't know. It's unclear, and the government is willing to concede that. But under the New Jersey statute, maybe what we just talked about, the colloquy, doesn't make any difference because if I dispense them to you, regardless how you define it, or I distributed them to you, regardless how you define it, if I take the implication of OGAR, those are just alternative means of meeting a particular element. I take it you're relying in part on the idea that in both the New Jersey statute and the federal statute that distribution is defined as delivery by means other than dispensing. Correct. And that's how it's defined under the New Jersey and federal statute for the differences between them. And that's actually where the case law that generates if there's a circuit split on the idea of whether there is a difference elementally from dispense and distribute. You could have facts where it's unclear what, for example, a practitioner is doing that might fit under either definition. I'm sorry, can you repeat? For example, a physician's delivery conceivably, depending on the facts, could be characterized as one or the other even though technically by their statutory definitions they would seem to exclude each other. That's correct, Your Honor. So really what we're getting at in this case is we don't know for certain when we run through the Mathis test where we fall out. And based off of that, we think that it's best to remand. And to address your point about remand for what, the Board of Immigration Appeals has not yet evaluated the other statutory factors either. All that's been appealed is the AGFEL determination, right? So for cancellation or removal, we have several requirements. One, that an LPR be here for at least five years or more. Two, that he's continuously resided for seven years after being admitted in any status. But were any of those challenged by the government? So no, but as far as a statutory requirement, they still haven't been proved up or given a decision by the board. Now, given this record, it's likely a non-issue because he will likely satisfy them. But the one thing that has not been addressed and that still needs to be addressed is whether or not, by the board in the first instance, is whether or not he deserves cancellation or removal as a matter of discretion. This is something that this court cannot substitute its decision for the agencies when it hasn't rendered it. And this is a requirement before an alien is eligible for cancellation or removal. This isn't an issue that the government raised before the BIA in challenging the IJ's decision, correct? Correct. Because, again, the kind of unique procedural history of this was that it was confident that when this was rendered, the alien was an aggravated felon. You know, the plea colloquy conclusively proves that he sold drugs. Is it sufficient that the IJ has already exercised her discretion to grant relief and the BIA has never disagreed with that exercise? So, yes, admittedly, the immigration judge actually twice did say that she would grant cancellation or removal as a matter of discretion. But what has not happened was, in that sense, it was the petitioner that was appealing. So it wasn't there was no decision for the Department of Homeland Security to appeal in that regard. It was the decision that once the immigration judge found that petitioner was statutorily ineligible for, that it was petitioner who appealed, not the government. And that's how we kind of came up the appeal ranks the second time. So, again, it is not sufficient for the immigration judge solely to have issued a decision on this. It would be up to the board, which has de novo review over matters of discretion, to evaluate in the first instance whether or not petitioner has met that. Now, what this would look like in practice is when it goes back to the board, the parties could say, hey, look, it's been 2012 since the IJ rendered the last decision on this. Let's submit documents and factors. According to matter of CBT, there's a whole realm of things that you evaluate for whether or not an alien is deserving of discretion for cancellation of removal purposes. Maybe we send it back to the IJ for more fact-finding to see whether there's more positive factors or negative factors in evaluating this decision. But what can't happen is just an affirmance of the immigration judge's decision without the board having an opportunity to review that. Is it the case if the BIA on remand were to determine that the IJ views for discretion, concluding that there should be a discretionary grant of cancellation of removal, that that is unreviewable by this court? It is unreviewable except for questions of law and constitutional issues. So if there was a question of law or constitutional issues, then yes, that would be appealable, those specific things. But the discretionary determination itself would not be. Can we just go back and clarify again the basis for remand here? Because I understood from your submission that you were suggesting that the application of MATHIS, perhaps as to the question of dispense, dispersing, or even school-school bus, that the application of MATHIS was something that you were asking be addressed in the first instance by the BIA. I hear you now saying something different, that you were conceding as a matter of law, something we can address, that there is not the necessary fit or the clarity that's required for a categorical match. And so the only basis that you're requesting for remand is for discretionary cancellation of removal. So with regards to the point that you raised, we would urge this court to remand it to allow the Board to decide MATHIS in the first instance. There are several reasons for this. One, it would be deciding whether MATHIS in the first, which just recently came out, it's applicability to a cancellation of removal under the INA and whether or not the alien is an ag fel. So to that degree, we would urge the court to, in addition to, it's an intervening case that the Board hasn't had an opportunity to evaluate. So no matter what they decide, it's likely to come back to some panel of this court, right? So with regards to the remand, is that what you're referring to? No, on the question of MATHIS. Yes, Your Honor, in probably a different capacity or different criminal statute. So we would urge that it go back to the Board to evaluate in the first instance whether MATHIS is applicable. And how this court can decide the issue to know if it chooses to. Okay. And if we think MATHIS is applicable in our evaluation of the categorical approach here, then your concession that it's not sufficiently clear as to dispense versus distribution is dispositive on that point, correct? Yes, Your Honor. So then the only issue for remand would be discretionary cancellation of removal. We would argue that it would be whether or not he's otherwise statutorily eligible, which would also be the five and the seven. Because, again, the only thing the Board has ever addressed is whether or not he's an aggravated felon, which is the third requirement for cancellation of removal. Now, would in all likelihood he be able to meet those? Yes, it appears he would. But, again, it would be up to the Board to rule in the first instance on those issues. But more importantly, the Board has definitely never weighed in yet on whether or not he deserves this as a matter of discretion, and they deserve the opportunity to do so. What assurance can you give us that if we remand it on that basis that, in fact, the government wouldn't be limiting its arguments to that basis? And this is against the backdrop of the last time the case was before this Court and we remanded. We remanded on the government's motion for the limited purpose of the BIA considering the applicability of date count. And the government, on remand before the BIA, argued the date count was actually irrelevant after requesting a remand from us for its consideration, then argued that Chang-Cruz obstructed removal proceedings by opposing remand and went ahead and offered further explanation for not obtaining the plea transcript, issues that were far beyond the scope of remand. Do you agree that that was improper, given the limited scope of our remand previously? And what assurance would we have if we remanded for the purpose of considering those other criteria that the government would properly limit the arguments raised on remand? So the remand motion was to determine what effect, if any, discounts had on Mr. Chang-Cruz, in particular in this case, in immigration proceedings. So this was one of the first times that the Board was evaluating discounts applicability. So with regards to the argument that DHS made, you know, Charas had just came out, I believe they had submitted a briefing before that had. So, you know, I think they were trying to advance the argument that maybe discounts wasn't applicable in immigration proceedings. But we had already ruled by that time, when you asked for the remand, to have the Board consider decant. We had already ruled in the end bank decision in Rojas that decant applied to the immigration context. And yet when it went back, the government argued that decant did not apply in immigration cases. Why is that? Your Honor, I don't have an answer for that. I could consult with... I mean, it looks like there was a remand that was in lane with a clear indication from our court that decant applied in the immigration cases, but the immigration, we were giving the immigration court the chance to consider it first. And then the government goes back and says, no, no, no, it doesn't apply. And the optics of that aren't good. I understand that, Your Honor. As far as assurances, I could say that, you know, this court, if it wanted to write a very narrowly tailored remand motion for that purpose, if it felt uncomfortable, it always has the option of deciding it in the first instance itself with the remand for the discretionary relief and otherwise statutorily eligible for cancellation removal. That way, you know, this court could have its assurances. I really can't offer any explanation for what happened at the proceedings before the agency in that regard. But there are safeguards in place, and I think the important thing to take away from this is that even if a petitioner is no longer statutorily ineligible as an AGFEL, we still don't know whether or not he is deserving of this discretionary form of relief as a matter of discretion. And this is something that is entrusted to the agency hands. Whether or not an alien is eligible for a form of relief that's created under the INA is solely within the purview of the agency to decide in the first instance, and the board really should get the first bite of that apple. Judge Nygaard, do you have any questions? I have none, thank you. Thank you very much. Thank you, Your Honors. While you're coming up, if we conclude that Mr. Shankruz is eligible for cancellation of removal, do we need to remand? Or is it sufficient that the IJA has already exercised their discretion to grant relief and the BIA never disagreed? Let me answer that question by first saying I do think it's important that this court hold, for the reasons Judge Krause identified, that Mr. Shankruz is not an aggravated felon as a matter of law. In light of the government's concession, but also in light of any of the other arguments we've raised, which we maintain. With respect to what else is there for the BIA to do, the other requirements for eligibility for cancellation of removal have been established during the year-long removal proceedings. They were never in dispute with respect to the question of the exercise of discretion. The IJA has twice said that, in her view, he is worthy of that discretion. In fact, in her decision post the BIA's remand, she said, assuming the pre-transcript wasn't properly in, and he wasn't an aggravated felon as a matter of law, I would adhere to my decision. I'm not aware, and I may just be wrong, I'm not aware of any decision or provision of the regs or any statute that says the BIA, if the government never challenges that discretionary decision, that the BIA must somehow independently pass upon it. Sorry, isn't that Ventura? Hasn't the Supreme Court told us, and with summary reversals, been pretty clear about telling some other circuits that when you go ahead and decide something on a basis that was not the grounds of decision of the BIA, that the Court of Appeals has overstepped its bounds? I think the difference is this Court doesn't need to decide anything with respect to the issue of discretion. The other difference is the government has never challenged this. It long ago waived any challenge to the discretionary decision. And this Court has done this before. The Johnson case cited near the end of our reply brief. In that case, like here, the issue on appeal before the Third Circuit was whether the petitioner had been convicted of an aggravated felony. This Court held that he had not. And there, like here, the IJ in his or her initial decision concluded in the exercise of discretion that, putting aside the eligibility question, he was worthy of that discretion. And this Court, in that case, remanded with instructions for the BIA to quote-unquote reinstate the immigration judge's initial decision because it had never been challenged and there was simply nothing else for the BIA to do at that point. I think that's the appropriate result here. I do think, regardless, it is important for this Court to reach the question of whether he constitutes an aggravated felony as a matter of law and for all the reasons in our briefing we've discussed here, we submit that he is not, including, of course, the government's concession today. Unless there are any other questions, I will. Judge Nygaard? I have none. Thank you. Thank you. Thank you to both counsel for very well presented arguments. I understand, Mr. Hewitt, your firm has taken this matter pro bono? Yes, Your Honor. Well, congratulations to you and your firm for doing so. Really, really well done both sides. Thank you, Your Honor.